UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| FERNANDO GUTIERREZ, | Case No.: CV 10-08960 (CW) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. SUMMARY

This matter is before the Court for review of the Social Security Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the undersigned may handle the case. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. Plaintiff and Defendant have filed their pleadings (Joint Stipulation For Social Security Case), and Defendant has filed

the certified transcript of record. After reviewing the matter, the Court concludes that the Commissioner's decision should be remanded.

## II. BACKGROUND

Plaintiff Fernando Gutierrez ("Plaintiff") applied for Disability Insurance Benefits and Supplemental Security Income ("SSI") on April 16, 2008, and again for SSI on July 16, 2008, alleging inability to work since June 29, 2007. Administrative Record ("AR") 105-120. An administrative hearing was held on February 17, 2010. AR 23-47. On March 22, 2010, an Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled within the meaning of the term under the Social Security Act. AR 9-18. Following the Appeals Council's denial of Plaintiff's request for a review of the hearing decision, Plaintiff filed an action in this Court. AR 1-8. After reviewing the matter, the Court finds that the Commissioner's decision should be reversed and remanded.

## III. DISCUSSION

Plaintiff challenges the decision on the grounds that, first, the ALJ improperly disregarded Plaintiff's treating psychologist's opinion in the ALJ's determination of Plaintiff's residual functional capacity ("RFC"), and, second, that the ALJ failed to properly account for Plaintiff's severe obesity in the five-step sequential evaluation process for determining whether a claimant has a disability. Plaintiff alleges legal error by the ALJ on both issues. For the reasons discussed below, the Court concludes that while Plaintiff's first claim has merit it amounts to harmless error, and that the second claim of error also has merit, but requires reversal and remand for further proceedings.

**A. ISSUE NO. ONE:**

Plaintiff first claims that the ALJ improperly gave little weight to the opinion of the treating psychologist in the determination that Plaintiff's mental limitations notwithstanding, he retained sufficient RFC to engage in work that exists in significant numbers in the national economy. Defendant argues that the ALJ's disregard of the treating psychologist's opinion was legitimate.

The Social Security Regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; see Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see Social Security Ruling ("SSR") 82-62. If the ALJ determines that a claimant's impairment is severe in step two, then the ALJ must determine in step three whether a claimant meets or exceeds a listed impairment. 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

A claimant's treating doctors' opinions usually carry substantial weight in the step three determination because the treating professional is hired to cure and has the opportunity to come to know the claimant's impairments in detail. Valentine v. Comm'r of Soc. Sec., 574 F.3d 685, 692 (9th Cir. 2009); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). However, the ALJ may disfavor or completely disregard the opinion of a treating physician for clear and convincing reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In so doing, the ALJ must specifically enumerate the reasons with the support of substantial evidence in the record. Id. at 830-31; see also Orn v. Astrue, 495 F.3d 625, 631-2 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). The ALJ may disregard a treating physician's conclusory opinions as well as those not supported by the administrative record as a whole. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). If another doctor contradicts the treating physician's opinion, the ALJ may reject that opinion, but, again, only with legitimate reasons

based on substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830-31. The ALJ meets the standard to disregard the treating physician's opinion by "setting out a detailed summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Embry v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988).

Here, the ALJ "gave little weight" to the opinion of the treating psychologist, Arturo Fiero, Ph.D. AR 16. Dr. Fiero opined in his concluding report that Plaintiff fit the "clinical profile of a chronically disabled [person] w[ith] a permanent impairment." AR 271. The ALJ asserted in his decision that Dr. Fierro's opinion was " unsupported by the longitudinal record or by Dr. Fierro's own treatment notes." AR 16. The ALJ offered no other support for his conclusion regarding Dr. Fierro's opinion and therefore did not meet the standard of "a detailed summary of the facts and conflicting clinical evidence." <u>Embry</u>, 849 F.2d at 421. The ALJ's failure to set forth specific facts that led to clear and convincing reasons for disregarding Dr. Fierro's opinion constitutes legal error. However, in light of Dr. Fierro's treatment notes and the treatment notes and conclusions of Plaintiff's two other treating mental health professionals, Dr. Simon Chin, M.D., who is a psychiatrist, and Dr. Rhoda Bernardez, M.D., also a psychiatrist, the ALJ's conclusion would have been the same. AR 213-20, 351-65.

Dr. Fierro's treatment notes, or his longitudinal record, characterize Plaintiff as a patient on the mend. AR 338-49. When Plaintiff's treatment began in October of 2007, Dr. Fierro observed that his relations with his family were "dysfunctional," he was "depressed," subject to "panic attacks," in physical pain, and generally not doing well. AR 346-48. By January 15, 2008, after four sessions, Dr. Fierro reported that "P[atien]t is recovering from physical disability, [and] needs time off to recover." AR 341. The same progress report noted that Plaintiff had never been hospitalized for a psychiatric condition, that while his family relationships were "impaired," he was not having suicidal or

4

homicidal ideation, not subject to binging or purging, not having psychotic symptoms, and not engaging destructive behavior toward himself, others, or towards property. The report noted that Plaintiff's Global Assessment of Functioning score ("GAF"), a widely used general metric of mental health, was 41, indicating fairly serious difficulties, but the report also noted that within the past year, Plaintiff's GAF had been at 69, indicating mild symptoms. Id. Furthermore, the treatment notes from the same day indicated a "high" capacity "to engage in and benefit from" treatment. AR 342.

Over the next four months, Plaintiff appeared to show improvement. His capacity to benefit from treatment remained "high." AR 338-40. He was helping out a friend stricken with AIDS, for whom he said he felt "compassion." AR 338-39. He said he wanted to return to work, though not necessarily to the same job. AR 339.

Nevertheless, despite what appears to have been some improvement by Plaintiff, Dr. Fierro's final Mental Assessment two months after their last session painted a dark picture. The final assessment consisted of twenty check-box observations, on which Dr. Fierro checked "moderately limited" for only four items, while for the rest he checked "markedly limited." AR 268-71. In the space for narrative observations, Dr. Fierro concluded that Plaintiff had "severe functional [physical and psychological] impairment," and that the "problems appear[ed] chronic and permanent." AR 270. The inconsistency between the longitudinal notes and the final assessment constitutes a basis to disregard the opinion. Batson, 359 F.3d at 1195.

Dr. Chin saw Plaintiff from October 2007 to April 2008. AR 213-20. Dr. Chin's notes also show an improving trend. On his last set of notes, Dr. Chin indicated that Plaintiff's condition was "stable," and that his treatment progress had been "Satisfactory." While not a wholly positive report, the notes indicate overall progress. Dr. Bernardez saw Plaintiff from August 2008 to July 2009, after both Dr. Fierro and Dr. Chin. Dr. Bernardez's early notes in September

2008, describe Plaintiff as "cooperative, verbal, and spont[aneous]," and possessing an affect "approp[riate] to [his] mood." AR 364. She also observed that his "compliance" with his medication regimen was "poor." AR 364.

By November, 2008, Plaintiff's medication adherence was "good," he was "fairly groomed, very polite, verbal [and] engaging," and he was self-reporting that his mood was "stable." AR 357. In March, 2009, despite continuing anxiety for which he continued to take medication, Plaintiff self-reported ongoing mood stability, the doctor noted that his medication adherence remained "good," and that his affect remained "approp[riate]." AR 355. Finally, in July 2009, the doctor noted that Plaintiff stated a desire to do "vol[unteer] work", he continued on a good footing with his medication, and he continued to be articulate" and "engaged". AR 353. Though neither Dr. Chin nor Dr. Bernardez indicated that Plaintiff had achieved full recovery, or that he was not still having problems, neither of them asserted or implied that he was fully incapable of doing any work at all.

Therefore, taking into account the treatment records of all three treating mental health professionals, the ALJ's conclusion that Plaintiff retained sufficient RFC would not have been different even if had he properly parsed Dr. Fierro's opinion. Although the ALJ erroneously set aside Dr. Fierro's opinion, his error was harmless because the ALJ's conclusion was correct nonetheless. Stout v. Comm'r Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2005) ("We have also affirmed under the rubric of harmless error where the mistake was . . . irrelevant to the ALJ's ultimate disability conclusion.").

**B. ISSUE NO. TWO:**

Plaintiff next alleges that given the finding of severe obesity the ALJ failed to properly incorporate obesity into the five-step evaluation to determine whether Plaintiff had a disability. Defendant counters that the ALJ did properly consider Plaintiff's obesity at each step of his evaluation.

In the five-step evaluation, discussed above, where there is evidence of obesity, the ALJ must determine the effect of the claimant's obesity upon his other impairments, his ability to work, and his general health. Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); SSR 02-01p. The Social Security Administration removed obesity from the listing of impairments in 1999, but where a claimant's condition falls short of the criterion for a listed condition and the claimant is severely obese, the five-step analysis should include the claimant's obesity. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005); Celaya, 332 F.3d at 1181; SSR 02-01p. A claimant's obesity should be considered when the record indicates that the obesity exacerbates other impairments. Burch, 400 F.3d at 682.

The ALJ did find that Plaintiff's obesity was severe. AR 11. Yet, after setting forth that severity in step two, the ALJ mentioned obesity only one more time in his analysis, in connection with a determination that Plaintiff's ability to concentrate was limited. AR 13. Otherwise, in step three, in the RFC assessment, in step four, and in step five, the ALJ failed to discuss Plaintiff's obesity. AR 12-18.

In his step three analysis regarding whether Plaintiff had an impairment or combination of impairments that met or exceeded one of the listed impairments, the ALJ should have discussed Plaintiff's severe obesity in a multiple impairment analysis. 20 C.F.R. § 404.1526(b)(3); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); SSR 02-01p. When a claimant's obesity is undisputed the ALJ must evaluate the obesity throughout the five-step evaluation. Celaya, 332 F.3d at 1182. According to the ALJ, Plaintiff did have multiple impairments aside from severe obesity: severe lumbar degenerative disease, status post fusion surgery, and depressive disorder. AR 11-12. The ALJ did expressly assert that neither the lumbar degenerative disease nor the status post fusion surgery met or equaled a listed impairment. AR 12. However, the ALJ did not expressly discuss obesity in combination with either or both of the above impairments, nor

7

was it discussed in combination with Plaintiff's depressive disorder, nor were all four impairments considered as possibly equaling a listed impairment. A complete evaluation required express consideration of the above alternatives to a listed impairment.

Additionally, the RFC assessment should have contained a discussion of obesity in the context of an assessment of limitation of function. SSR 02-01p. However, the ALJ's failure to account for Plaintiff's obesity in step four did not prejudice Plaintiff because the ALJ determined Plaintiff was not capable of performing his PRW. AR 16.

Finally, the ALJ failed to consider Plaintiff's obesity in the step five determination that Plaintiff had the ability to perform work that exists in substantial numbers in the national economy. AR 17-18. In conducting the analysis for step five, the ALJ may call a vocational expert ("VE"). Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. Or. 2002); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must present the VE with various hypothetical descriptions of different abilities and limitations that match those of the Plaintiff. Id. at 1044. The ALJ must include all substantiated limitations in the hypothetical descriptions, particularly obesity when it is severe. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Burch, 400 F.3d at 682.

The ALJ properly called a VE to assist with the step five determination, The ALJ's hypothetical descriptions to the VE encompassed limitations such as how long a person could stand or sit, how much weight a person could lift, whether a job required occasional crouching, whether a job required interacting with the public, and whether a person had limitations on his ability to concentrate. AR 42-46. However, none of the hypothetical descriptions posed to the VE set forth obesity. Given that Plaintiff's obesity was deemed severe, the ALJ had an obligation to expressly include it. The failure to include obesity as a limitation for the VE to consider was improper. Thus the ALJ erred in his

determination of the Plaintiff's capability to perform other work in the national economy.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: August 31, 2011

_____/s/_____
CARLA WOEHRLE
UNITED STATES MAGISTRATE JUDGE